IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DEWAYNE MARTIN                                                                                  PLAINTIFF

V.                                    CASE NO. 3:16-CV-147-BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                  DEFENDANT

**ORDER**

**I.     Background**

Dewayne Martin seeks judicial review of the denial of his application for supplemental security income benefits.[1]  (Docket entry #13)  Mr. Martin claims he has been disabled since October 12, 2006, when he was injured in a car accident.  (SSA record at 104)  Mr. Martin based disability on arthritis in his hands and problems with his neck and left shoulder.  (*Id*. at 61)

The Commissioner's ALJ held a hearing on Mr. Martin's application.  Mr. Martin appeared, but was not represented by counsel.  (*Id*. at 21)  After considering Mr. Martin's application, the ALJ determined that Mr. Martin had severe impairments — left shoulder pain and cervical degenerative disc disease — but that he could do light work with no

---

[1] The parties have consented to the jurisdiction of a magistrate judge.  (Docket Entry #4)

frequent overhead reaching with the left upper extremity. (*Id*. at 11) The ALJ went on to find, at step four, that Mr. Martin could perform his past relevant work as a "small business manager." (*Id*. at 14) Alternatively, the ALJ found, at step five, that because a vocational expert ("VE") identified office helper and small products assembler as representative available work, Mr. Martin was not disabled and denied the application. (*Id*. at 15)

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review. (*Id*. at 1-3) Mr. Martin filed this case to challenge the decision. (#2) In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[2]

## II. Mr. Martin's Allegations

Mr. Martin challenges two aspects of the ALJ's decision: (1) the determination that he could perform his past relevant work; and (2) the assessment of his credibility. (#13) Mr. Martin claims that the VE mischaracterized his past relevant work as a "Manager, Retail Store" Dictionary of Occupational Titles ("DOT") listing 185.167-046.

---

[2]See 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (court will uphold decision if it isn't based on legal error and substantial evidence in the record as a whole supports conclusion that claimant isn't disabled).

He says that he worked from 1993 to 2010 as a self-employed glass installer and thirteen years as a glass installer for S&S glass both before and after being self-employed. (*Id*. 24-25) He contends that working as a glass installer exceeds his ability for light work without frequent overhead reaching with his left arm.

Further, according to Mr. Martin, the other jobs identified by the VE, office helper and small products assembler, require frequent and constant reaching respectively. He claims that both jobs exceed his limitations and that the VE did not explain the conflict. Consequently, he contends that the Commissioner failed to meet her burden to show work exists that he could do. For these reasons, he argues, substantial evidence does not support the decision.

### III. Discussion

#### A. Applicable Legal Principles

Mr. Martin's arguments implicate steps four and five of the disability-determination process.

> At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his … past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability … benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his … medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability … benefits.

*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (citations omitted).

## B. Credibility

Substantial evidence supports the ALJ's credibility assessment. To determine a claimant's RFC, the ALJ must first assess the claimant's credibility because it plays a role in determining RFC. See SSR 96-7p, Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements. To assess Mr. Martin's credibility, the ALJ followed the required two-step process and considered the required factors. *Id*. (SSA record at 11) The court must decide whether substantial evidence supports the ALJ's credibility assessment.

The ALJ may discount the claimant's subjective complaints if there are inconsistencies in the record as a whole. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Mr. Martin complains that the ALJ failed to specifically mention his work history and relied solely on medical evidence when assessing his credibility. Both arguments fail.

Mr. Martin testified that he was involved in an automobile accident in 2006 that left him with neck and back pain. (*Id*. at 25-26) There is no medical evidence in the record prior to March, 2013, and Mr. Martin continued to work until 2012. (*Id*. at 24) The treatment records and work history are inconsistent with the alleged onset date and with his claims of disabling pain.

In December, 2013, nine months after undergoing a consultative physical examination by Joseph M. Patterson, M.D., Mr. Martin began treatment for neck, left

shoulder, back, and feet pain at ARCare. (*Id*. at 213-14) Mr. Martin was treated conservatively. (*Id*. at 207-2014) An x-ray of his cervical spine on October 2, 2014 revealed mild disc space narrowing at C4-5, C5-6 and C6-7, and mild stenosis at C5-C6 on the right. (*Id*. at 230) The impression was mild chronic degenerative changes. (*Id*.)

In addition to the medical evidence, the ALJ discussed Mr. Martin's activities of daily living. The ALJ noted that Mr. Martin completed a pain questionnaire in October, 2013, indicating that he had pain in his neck, shoulder, hands and fingers, "all the time everyday." (*Id*. at 12, 140) And yet he was not taking any pain medication. (*Id*. at 141) The ALJ also observed that, in a function report, Mr. Martin reported being able to feed and water his cat, bathe and dress with some pain, prepare small meals every day, perform light housework, ride in a car, go out alone, shop in stores for groceries, watch television, read, and used no assistive devices. (*Id*. at 144-51) The ALJ assessed relevant factors in making his credibility determination.

Mr. Martin complains that the ALJ did not mention his work history when evaluating his credibility. While it is true the ALJ did not specifically mention work history in the section of the opinion where he discussed credibility, earlier in the opinion the ALJ noted that Mr. Martin had performed glass installation work over the last twenty years and had a "history of consistent work activity." (*Id*. at 10)

The ALJ considered all relevant factors in assessing Mr. Martin's credibility. See *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (ALJ is not required to discuss every *Polaski* factor).

### C.  Conflicts in the Vocational Expert's Testimony at Step 4

Apparent unresolved conflicts exist in this case. Under the Commissioner's regulation, the ALJ must ask the VE for a reasonable explanation "for any 'apparent unresolved conflict' between vocational expert testimony and the Dictionary of Occupational Titles (DOT), before relying on the testimony in determining whether the claimant is disabled." SSR 00-4p, *Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions*.

Here, the conflicts flow from the ALJ's findings at steps four and five that Mr. Martin could perform his past relevant work as a "small business manager" and, alternatively, that he could perform the jobs of office helper and small products assembler. (*Id*. at 14) When the ALJ asked the VE about Mr. Martin's past relevant work, he identified the work as glazier[3] (DOT 865.381-010) and "manager," which the VE testified is "also listed as small business owner" (DOT listing 185.167-046). The VE

---

[3]The job of glazier describes a person who "[I]nstalls glass in windows, skylights, store fronts, and display cases, or on surfaces, such as building fronts, interior walls, ceilings, and tabletops" and is classified as medium work in the DOT. DOT 865.381-010.

went on to testify that a person with Mr. Martin's limitations could return to his past relevant work as a "manager."

Identifying his past relevant work as a "manager" created an apparent conflict with the DOT, because DOT listing 185.167-046 is titled "Manager, Retail Store." The DOT describes this position as:

> Manages retail store engaged in selling specific line of merchandise, such as groceries, meat, liquor, apparel, jewelry, or furniture; related lines of merchandise, such as radios, televisions, or household appliances; or general line of merchandise, performing following duties personally or supervising employees performing duties: Plans and prepares work schedules and assigns employees to specific duties. Formulates pricing policies on merchandise according to requirements for profitability of store operations. Coordinates sales promotion activities and prepares, or directs workers preparing, merchandise displays and advertising copy. Supervises employees engaged in sales work, taking of inventories, reconciling cash with sales receipts, keeping operating records, or preparing daily record of transactions for ACCOUNTANT (profess & kin.) 160.162-018, or performs work of subordinates, as needed. Orders merchandise or prepares requisitions to replenish merchandise on hand. Ensures compliance of employees with established security, sales, and record keeping procedures and practices. May answer customer's complaints or inquiries. May lock and secure store. May interview, hire, and train employees. May be designated according to specific line of merchandise sold, such as women's apparel or furniture; related lines of merchandise, such as camera and photographic supplies, or gifts, novelties, and souvenirs; type of business, such as mail order establishment or auto supply house; or general line of merchandise, such as sporting goods, drugs and sundries, or variety store.

DOT 185.167-046.

At the hearing, when the ALJ asked Mr. Martin about his past work, he testified that he worked as a glass installer for S&S Glass for 13 years before doing the "same

thing" as a self-employed as a glass installer from 1993 until 2010. (*Id*. at 24-25) He testified that he installed residential and commercial glass. (*Id*. 27)

In a Work History Report, Mr. Martin described his job when he was self-employed as "installed residential and commercial glass." (*Id*. at 153) He reported the job required him to walk or stand, stoop, handle and reach eight hours a day. He stated he frequently lifted fifty pounds and occasionally 100 pounds. (*Id*.) He stated that he supervised one other person and was responsible for hiring and firing, but also indicated that he was the lead worker. (*Id*.) His description of his job with S&S was identical except there he supervised two people and was not responsible for hiring and firing. (*Id*. at 154)

It is clear from Mr. Martin's testimony that, while self-employed, he did not manage a retail store; engage in selling merchandise, such as groceries, meat, liquor, apparel, jewelry, or furniture; supervise employees engaged in sales promotion activities, or direct workers preparing, merchandise displays and advertising copy; or supervise employees engaged in sales work. The only task of Mr. Martin's job that appears similar to that of a retail manager is that he was responsible for hiring and firing the one employee who assisted him in his glass installation business.

In spite of the apparent conflict between the retail manager job described in the DOT and the glazier job described in the DOT and actually performed by Mr. Martin, the ALJ did not ask the VE to explain the apparent conflict. Mr. Martin, who was

unrepresented at the hearing, appeared to have noticed the conflict. He engaged in the following exchange with the ALJ after the VE testified that he had performed work as a manager:

>CLMT: I can't work with computers.
>
>ALJ: Well, when you own a business they classify you as a manager whether or not you work with computers.
>
>CLMT: I never used one, I don't know how.
>
>ALJ: Okay.
>
>CLMT: Always just did it with a pen and pencil.

(*Id*. at 35)

At the conclusion of the VE's testimony, the ALJ asked whether her testimony was consistent with the DOT and its companion publications. (SSA record at 36) The VE answered "yes." (*Id*.) That response was insufficient to resolve the apparent conflict, between the job actually performed by Mr. Martin and the "retail manager" job identified by the VE as Mr. Martin's past relevant work. While the ALJ may have recognized the conflict, his statement that, because Mr. Martin was a business owner, he is classified as a manager is inadequate to resolve the conflict, which requires expert testimony. The ALJ erred by finding that Mr. Martin could do his past relevant work as a manager.

### D. Conflicts in the Vocational Expert's Testimony at Step 5

The ALJ made an alternative finding at Step 5 of the sequential process that Mr. Martin could perform other jobs available. He found that Mr. Martin could perform the jobs of office helper (DOT 239.567-010) and small products assembler (DOT 739.687-030). A description the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) — a DOT companion publication — lists frequent reaching as a physical requirement for office helper, and constant reaching as a physical requirement for small products assembler. SCO at 06.04.23 and 07.07.03. The SCO defines reaching as "[e]xtending hand(s) and arm(s) in any direction." SCO at Appendix C. Again, the ALJ addressed the possibility of a conflict by asking the VE generally about consistency with the DOT and its companion publications, but under Eighth Circuit case law, that is not enough to resolve the conflict.

Although a particular job's requirements may be more or less than the SCO's listed requirements, the SCO's reaching requirements have served as the basis of two Eighth Circuit remands. *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014); *Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014). In both cases, the ALJ limited the claimant's ability to reach, and the VE identified a job that, according to the SCO, requires frequent reaching. *Moore*, 769 F.3d at 989; *Kemp*, 743 F.3d at 632. In both cases, the ALJ asked the VE about the consistency of his testimony with the DOT, but it was not enough for the VE to confirm his testimony was consistent with the DOT and the companion volumes. *Moore*, 769 F.3d at 989; *Kemp*, 743 F.3d at 632. In both *Moore* and *Kemp*, the Eighth Circuit

remanded because the record did not reflect whether the VE or the ALJ recognized an apparent conflict. *Moore*, 769 F.3d at 990; *Kemp*, 743 F.3d at 633. In another case, the Eighth Circuit stated, the ALJ has "an affirmative responsibility to ask about 'any possible conflict' between [vocational expert] evidence and the DOT . . .." *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014). That is, the record must reflect an explanation about why a person with reaching limitations could do jobs that may require frequent or constant reaching.

The VE's general statement that her testimony was consistent with the DOT and its companion publications was insufficient to resolve the conflict, because the record does not explain why a person who cannot perform frequent overhead reaching with his left upper extremity can reach frequently and constantly to work as an office helper and small products assembler. Considering the frequency with which a VE encounters these occupations, there is likely an explanation, but the record does not reflect the explanation. The record does not even reflect whether the VE or the ALJ recognized the conflict. This case requires additional vocational evidence to resolve the conflict.

## IV.  Conclusion

Inconsistency in the record supports the ALJ's credibility assessment, but the ALJ did not resolve apparent conflicts between the VE's testimony and the DOT. The decision of the Commissioner is not supported by substantial evidence. For this reason, the Commissioner's decision is reversed and remanded for action consistent with the

opinion. This a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 12th day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE